The Honorable Judges of the United States Court of Appeals in and for the Seventh Judicial Circuit. Hear ye, hear ye, hear ye. All persons having business before this Honorable Court are admonished to draw near and give their attention as the Court is now sitting. God save the United States and this Honorable Court. Good morning, everyone. Welcome. Good morning. Welcome to the first day of school. Judge Scudder and I are very happy to see you. Judge Ripple will not be attending in court today, but he will be listening to the recordings and, as always, will be fully, totally, 100% prepared. So our first case of the day is Bradley Bensenberg v. FCA US LLC. It is Appeal Number 20-3407, and Mr. Bonner, good morning. Good morning, Your Honors. It is my pleasure to appear before you, and thank you all for making the time to hear from us. This case, Your Honors, is a very important case in that the District Court created a proof problem for the plaintiff that really is a bridge too far. The traditional products liability, strict liability claim is based on policy reason, where the burden is shifted to the manufacturer who can bear the cost of the loss. The plaintiff only has to prove a prima facie case. The District Court here ignored the prima facie case that was put forth by our expert, Dr. Ivani, a 35-year-old seasoned expert engineer, design engineer, biomechanics engineer. She ignored the prima facie case put by him when he raised the tribulation fact that based on all of the scientific evidence, his experience, his skill, his visiting the scene, calculating all of the distances, engaging in the Newtonian mathematics, he concluded that the vehicle was traveling at at least 53 miles an hour, much greater than the 16 miles an hour must drive speed. Now, the opposing opinion was that the vehicle was not traveling at 16 miles an hour. So there is a material dispute that only can be resolved by the jury. The mistake that the district judge made here, the judge acknowledged in her order, on page 74 of her order. She said, quote, the court does not take issue with Dr. Ivani's opinion that the crash was so severe that it likely met the industry standard deployment threshold, but rather with his jump to his premise, to the conclusion that the airbag system was thus defective. Now, she then goes on to raise questions that he did. She thought he should have raised, but those would be questions more appropriate under cross-examination. Under the White case, which really where the Supreme Court of Illinois defined the requirement of the plaintiff to prove the prima facie case of for products liability, strict liability, the plaintiff only needs to prove, one, that that was a defective product that was in the same condition when it left the manufacturer at the time it resulted in injury or damage to the plaintiff. Mr. Bonner, forgive me. I. I take your, your, your point, you know, from, from the briefs that the complaint alleged claims of a manufacturing defect as well as a design defect, and I do see that you mentioned the possibility of a manufacturing defect, at least in passing, in the summary judgment briefing below, but I think it would be helpful if you would point to us where in Dr. Ravani's report or deposition he identified any manufacturing defect as opposed to a design defect. Judge Darrow plainly understood Dr. Ravani to be advancing a theory of design effect, defect, sorry. Yes, well, that's where I believe she committed the error. So the claim of strict liability can be viewed as a picture image as an umbrella with two handles, one handle is proving a design defect, the other handle is proving a manufacturing defect, the district court did not analyze Dr. Ravani's evidence from the manufacturing defect, both of which proves the claim of strict liability. Instead, she went down about all the details, proving a design defect, as if we were challenging every, every car that was manufactured. But wouldn't your expert have to identify a particular component that failed? Yeah, that was not. In order to make a plausible case of manufacturing defect. He's not required to prove a specific boat that failed, a particular sensor that was didn't fire to make out a claim for a manufacturing defect. Rather, he is there to prove that this vehicle did not perform in the way that it was intended to perform. It was not, it was not performing in a way that a reasonable consumer would expect to perform, which is that the airbag with the floor when it's hit a solid four by four concrete post at 53 miles an hour. Now, what he did, Mr. Bonner, Mr. Bonner, yes, can I, if you don't mind, I want to pause you on that exact point you just made. And then I'll let you return to the point you wanted to make about the facts. So the point I want to pause you on is a point of Illinois law. Yes. Okay. And it's, it's this. If your client was proceeding, it seems like you're saying much more on a manufacturing defect theory, or at least on appeal. That's what you want to focus this on, on a manufacturing defect theory, as opposed to design defect. I, I very much understand that the consumer expectation test is a meaningful aspect of a manufacturing defect claim under Illinois law. But do you read Illinois law more broadly than that to say that in any and all manufacturing defect cases, there is not and never will be a need for expert testimony? No, Your Honor, we do not read the Illinois law so narrowly. In fact, in the Tweedy case, Tweedy v. Wright Ford, there was not an expert. And the Illinois Supreme Court held that the product was defective, particularly in 1857. Right, that's exactly why I'm asking you this question, because Tweedy seems to be a very, very different circumstance there. If memory serves, that's that car that had 7,500 miles on it that the driver hit the brakes, and unfortunately, the car didn't stop and she was injured. Okay. And the car was only four months old, I believe. Yeah, pretty, pretty new vehicle, right? Not, not literally driven off the lot, but figuratively, kind of right off the lot. Okay. Yeah. The reason I want to focus you on this is because an airbag seems to be an altogether different, different type of device. And the detonation of an airbag, it's triggering points. Then a circumstance where somebody is approaching a stoplight or an intersection and they hit the brakes and the brakes don't work on effectively a new car. It just seems like a very different, a very different factual circumstance. Well, it is somewhat factually different. You're correct, Your Honor, that airbags are much more complicated, arguably, than a really a brake system with the brake cylinder. But the premise remained the same. But unlike Tweedy, where there was no expert, in this case, we have an expert. We have a 35-year design expert who went through all of the mechanisms, all of the methodologies that a biomechanics expert, a design engineer goes through. Which is to look at the mathematics, visit the scene, look at the eyewitness testimony, look at the black box. The black box here, this computerized system, which was analyzed, showed that the car was going 53 miles an hour. So I think you're quite right. I think you're quite right. And your point is fair that Dr. Ravani is a reconstruction expert. OK, but to go back to the point that my colleague, Judge Rovner, was asking you, the only place that Dr. Ravani seems to offer an expert opinion about the airbags that I can tell is right in the middle of page 19 of his expert report. It's the middle bullet point. But that seems to me to come up short, or at least I'd like you to react to that, because he doesn't identify the source of the manufacturing defect. He just says we have, effectively, we have a product failure here. Exactly. And that's because with a manufacturing defect, you're showing that this is a one-off of the 100 particular 2008 Aspens. We're not claiming that every Aspen had a design defect. We're saying this particular Aspen was one-off. Therefore, it was a manufacturing defect. And as to this particular Aspen, it did not perform, under Tweedy, under all of the progeny, in the way that a reasonable consumer would expect it to perform. Because when you look at all of the evidence, you look at the defendant's evidence, they say the system was working properly. The black box said it was working properly. They claimed, however, that the car was traveling at less than 16 miles an hour at the must-fire speed, whereas Dr. Ravani looked at that same evidence and accepted their conclusion that, OK, if everything is working properly, and the only difference here is the speed, 53 miles an hour versus under 16 must-fire miles an hour, there is a disputed material issue of fact that only a jury can decide. And so he looked at all of the evidence and concluded that this is a one-off. Therefore, it is a manufacturing defect. It is not a defect that exists in all of the lines of the 2008 Aspen. But in this particular one, traveling at 53 miles an hour, hitting a 4-by-4 concrete brick wall, it should have deployed. There is no indication the age of the car had any factor. They never raised the age of the car having a factor. They never raised that there was something abnormal about the vehicle. The only thing that happened here is that the airbag did not do what it was designed to do, what the manufacturer intended it to do, and that was to deploy and protect Mrs. Donna Bensonburg. And therefore, there's a tribal issue. Mr. Bonner, you are quite deeply into your rebuttal time. So I want to just mention that. Thank you very much. I will reserve the rest of my time for rebuttal. Okay. And Mr. Bell. Good morning, Your Honors. If I may proceed, this case involves five counts. Counts 3, 4, and 5 have not been appealed in this case. There's no argument on those. So we come down to count 1 and count 2. It seems clear to me that count 2, the design defect, is out. Mr. Bonner has just said that. And of course, in his reply brief, he admits, I believe, at page 11 that the court applied the correct and appropriate standard for a design defect. So this is a manufacturing defect case. We raise as our first argument the issue of waiver. The plaintiffs never made a manufacturing defect in the lower court. And of course, Judge Darrow. That's not quite true. They did in passing. It's in the summary judgment briefing. In passing. In passing. And I think that, you know, the law of waiver should not and does not allow a general argument. It requires a specific argument. But let me just focus on the waiver issue, and I'll return to manufacturing defect a little bit later. When we filed our motion for summary judgment, we attacked both design and manufacturing defect. The record in the case consisted of their answers to interrogatories, which never disclosed a manufacturing defect. Ravani's report does not have a manufacturing defect. And I must say that if we look at his testimony, both at page 147 and 130 of his deposition, he really eliminates a manufacturing defect. This court had no opportunity to review a manufacturing defect. The plaintiff filed a 20-page response to the Daubert motion and I think 26 pages on the summary judgment. The words manufacturing defect don't appear in those cases. It wasn't fair to this defendant to now argue a manufacturing defect, and it certainly wasn't fair to Judge Darrow, who took a lot of time, reviewed everything, and made her findings. We don't think that the plaintiff can get over a waiver argument in the case. Mr. Bell? I'm sorry to interrupt you. I have one question for you. Just on Dr. Ravani's written opinion, so set aside his deposition for a minute. What opinion on the airbag do you believe he offered or was intending to offer in his expert report? And what I mean by that, I'm not asking you to make an argument about it. I'm just asking you a descriptive question. Do you believe that he offered an opinion that goes more to design defect, manufacturing defect, or both? I believe, Your Honor, based on my many years in product liability, this is a design defect analysis. You know, the law teaches us that a manufacturing defect, I think, is described in the product, and there's just no identification of that at all. It wasn't fair in discovery for us to be surprised on appeal, and it certainly wasn't fair to the district court as well. So we feel very strongly that there was a waiver at the time of the summary judgment. The court should not have to guess or manufacture an argument from the plaintiff. All right, let me just be clear. If the argument was that this was a design defect, are you saying that Dr. Bravani's report would pass muster? It would not pass muster for lack of methodology as described by the court. If it is a design defect, that calls into question the multiple factors under the risk utility test, which include feasibility, compliance with standards and regulations, the ability to have a different design, and a multitude of factors. It is a much more complex analysis, which requires analysis and requires an expert witness to meet that test. So, no, it would not. So, please continue. I think his report comes much closer to what they found in the Clark v. Takada case, of which I know the court is familiar with, where you're taking a failure to perform and not addressing the methodology, or as we find later in the most recent opinion of Kirk v. Clark, there's no analysis to establish the, and it's a cumbersome word used in the Kirk case, the unreasonable dangerousness that's, that requires both methodology and an expert with qualifications, and that's just simply absent in this case. So, until we come. Go ahead. Go ahead. I think your question, I think your question might be more important to us than my No, no. How can I help you, Warner? Well, does the record indicate whether the vehicle's airbag system was ever damaged or repaired? If such a system is expected to last for the life of a car, why is it not permissible for a fact finder to infer the existence of a defect when it fails to deploy under circumstances where, well, where one would expect it to deploy? So, we are now looking at the record, Dr. Ravani did know such analysis on the repair of this vehicle, eight years old and 128,000 miles. The record is absent of that analysis. He hasn't done that analysis, nor is there anything in the record that gives the court any basis for, as they say, to negate that inference. But it's even more important than that, Your Honor. There is one other aspect that I think the court has to look at. Ravani, and I believe this is at page 130 of his deposition, talks about what is the probability that it should have deployed. And he very candidly says, and the district court cited this, well, I can't tell you to 80 or 90% that it should have deployed. He says, I can tell you that it's more than 50%. The history of the vehicle, the age of the vehicle, the mileage of the vehicle, and his failure to rule out the fact that, well, in this collision, it may not have deployed, gives you that uncertainty where there can be no inference drawn from that fact. And I think that was what was most troubling to the court, is that there's no analysis here. And if we're talking about a manufacturing defect, which is what the plaintiff has conceded in their reply brief and here in their remarks, we then come back to the court's Daubert hearing, applying the risk utility test. And I mean, there can be no question that, as a threshold matter, Judge Darrow did an outstanding job on applying the Daubert Rule 702 framework. Once we get past that, we're talking about an abuse of discretion or an opinion that must be, I think, manifestly erroneous that was described, I want to say, in either the show case or more recently in the Kirk case. Well, there's just not an abuse of discretion here. This judge did an outstanding job and found that there was just not that analytical connection between the failure and the opinion of defect. And as Kirk says, the unreasonably dangerousness, if that's also a word now, but I have trouble even pronouncing it. And so we're looking at that analytical gap. So once we see that there's no abuse of discretion in barring this expert from talking about the Daubert Rule 702, so what do you have left? Plaintiff argues that there's a consumer expectation test that might be applied here. The Kirk case and the show case put that to rest. I think the language is something, and these are in the last two paragraphs of the Kirk case decided in Marsh, the language is clear. If you need an expert for risk utility, you need an expert for consumer expectation. And here they don't have an expert witness on defect or unreasonably dangerous. Mr. Bell, can I press you on that? I'm sorry. Yes. Can I press you on that? I'm not so sure that I read our case law with that breadth. So let me give you a hypothetical. Suppose I buy a brand new car this afternoon, I drive it off the lot, and as I'm approaching the first stoplight, the front airbag detonates. Okay. And I say, well, I sure didn't expect that. And I'm hurt now. I'm injured. Couldn't I proceed under a theory of strict liability against the manufacturer invoking the consumer expectation test, the Illinois Supreme Court's reasoning in Tweedy? And why in a circumstance like that would I need to bring forward an expert? It's as clear as day. The airbag should have never detonated or deployed, whatever the right terminology is in that situation. Your Honor, I would, I see your point, but I think that point has been addressed in the case, which I believe was an airbag case that was a reasonably close fact pattern. Sure. When you get into reasonably close fact patterns, I can see, given the complexity of an airbag as a device, where expert testimony may be needed. But the only reason I'm asking you this question is, at least for my part, I'm pretty reluctant to just say that expert testimony is required any time we have an invocation of the consumer expectation test and an airbag or any kind of iteration of that. I'm just very nervous about kind of always and never in cases like this. Your Honor, I think, and I, as an appellate court judge, I understand that. But I don't think that that concern is apt here. This is an older vehicle. It's a, it unquestionably has to be put through the design analysis of the risk utility test. And I think on balance, this is the test that provides the greatest protection in a legal setting for everybody moving forward. So I think I would say, and I think the courts talk about, they reference a chair in one of the cases. But that's not what we're involved with in this case. Well, hold on. Let me make sure I understand that. So your point is not so broad as to say that Ms. Bensonberg, as a legal matter, could not proceed on a manufacturing defect theory, is it? As a matter of law? I do not believe that she could proceed as a matter of law without expert testimony in this case. Yeah, fair enough. That's true. Okay. I'm saying in all cases and forever and ever, I don't think this court is faced with that issue in this case. This is a particular case. And if the clock looks correct, I think I am out of time. Thank you. Yes. If I may, I would like to address the factual points that were raised both by you, Judge Scott, as well as Judge Rover. You hit the very tribal issue here, which is that is there any evidence that this airbag malfunctioned? The evidence is in the black box. It was supposed to work the way it was supposed to work. It didn't work. There's a tribal issue fact as to why it didn't work. The defense maintained it was not traveling at 16 miles an hour must fire. Our expert looking at the totality of the evidence said this vehicle should have fired. This airbag should have fired because it was traveling at 53 miles an hour based on black box. The defendants expert evidence. Now, of course, Ms. Vincent Burke sustained a broken neck and other very serious injuries. And Dr. Avani, as a biomechanical expert, testified that had the airbag deployed, these injuries would have been significantly minimized because she was a very healthy lady. Now, in terms of the waiver, there's no waiver here. Even judge the judge and district judge acknowledges that in count three, one to three of our alleged not only design, but also manufacturing defect. And we appealed de novo from her order. So all of the issues that she raised in her order, we appeal from the problem. She made no analysis of a manufacturing defect. She only went on a design defect and required the plaintiff to prove a specific boat did function. A specific nut wasn't tight. And that is not the test. Improving a manufacturing defect as one way to prove a strict liability, a private liability case. The Dalbert analysis that she went through to exclude Dr. Avani was also very defective. Sure, she raised questions that Dr. Avani could have raised. Those questions go more to the weight that a jury would assign to Dr. Avani's testimony under cross examination. They do not go to the primary element as to what plaintiffs need to prove. After all, private liability is a policy decision cause of action. The law wants the burden to be placed on the manufacturer instead of on the injured person who may not be able to hire an expert. In fact, we even attach the deposition, the declaration of Mr. Vinzenberg, the son of Mrs. Donna Vinzenberg, who as a layperson testified that looking at the damage to this vehicle and looking at where this vehicle landed and based on his knowledge as a farm person dealing with tractors and heavy steel mechanics, knowing the speed of the vehicle on black box, that this vehicle was traveling beyond the must fire speed of 16 miles an hour. So there's a lay person's opinion in addition to the expert opinion. And on the tweeting, we don't need any expert opinion. We have two opinions that create a travel issue fact, material issue, which is whether or not this car was traveling at a greater speed than must fire of 16 miles an hour. And therefore, the airbag should have deployed or whether it was traveling under 16 miles an hour that and therefore it should not have deployed. The defense here said it was traveling under. That's the issue that must be resolved by the jury. This case must be reversed. Thank you very much. Thank you both very much. Thank you.